# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO. 21-62452-CIV-SMITH

THE NORTH FACE APPAREL CORP.,
VANS, INC.,
TBL LICENSING LLC,
KIPLING APPAREL CORP.,
JANSPORT APPAREL CORP., and
VF INTERNATIONAL SAGL,

          Plaintiffs,

vs.

CEKCYA STORE aka LINGDAZHANG; AKSR
SUGARIOS STORE; MENNE STORE aka YANG1105;
CYDM STORE; HGLI STORE; HIGH QUALITY
CASHMERE FEMALE STORE; KING-PRO STORE;
SHOP5561007 STORE; WENY STORE; 88 LITTLE
MONKEY 8 STORE; A BAG FOR HAPPINESS STORE;
BAG FOR BUYER STORE; HEALTHY SHOPPING
STORE; MAKE FRIENDS STORE; AGOODCOAT;
BRAND350; BUYER666; CASUALSHOP1314;
CLOTHESHOPSTORE; COATZHENG;
DESIGNERSHOP0110; DESIGNERSHOP1112;
DESIGNERSHOP1115; DESIGNERSHOP2010;
DESIGNERSHOP2020; DESIGNERSHOP4603;
DESIGNERSHOP7778; DHRELIABLESTORE888;
DI_GIRL; DIDMORE; DOCERY; FENFEN0309;
GIVENCHY999; GODMEN; HAPPYDH666; HAPPYGO8;
HEYJAMES; HIPHOPBOY; HONGYUNDANGTOU888;
HOTBITCH; JACK998; JINGSHAN666; JIQIAO;
KIDS_GIFT; KK_TEES; LUXURYAAPE;
MEI_HAIRSTYLE; MINGFENG899; MYLEISURE;
NASASPACE; NORTHFACE_TNF; ONLOVE;
QINGFENG25; SEALS168; SEPAL01; SHAMOLVZHOU;
SHIRT_SHOP6688; SOWANGZHEJK; SQUARE1985;
STREETFASHION2020; SUIYUAN99; TOPFASHION2020;
TOPSHOP1311; MENS WINTER COATS aka
TOPSHOP1588; XIAOPINGGUO0202; XINGHUO1988;
XUEQIN985985; YEJIANFENG2; YW69888; ZLQ2018;
AIR_FORCE_STORE; DH_STORES;
DHGATETOPMERCHANT; KDSHOE STORE aka FJZLM;
LYMINGTON; NK_VAPORMAX; NKGOODSHOES002;
USONLINE; WYL3; BUYYEEZY;
DONGFANGMINGZHUOK STORE; ELANPING;
GFHYUE; HD9988; HOTSALETRADE; IYEEZY500;

1

LUXURY11; MACHOES; MORNING0114; MONCLAIR
aka OGMINE; ROSE_KING; ROSE28; SHEN_2018;
CHAUSSURES POUR HOMME aka SHOESPALACE2018;
SNEAKERWEI; XUNWAN; GOODDAYITEMS;
CHAOJU666; CHENJIAXIAO; DALIAOJ; ULTRAPLUSS-
BROW; ZHANGHELONG880123; HUANGHAIFEN556;
JERRY XIA; KASSANDRATREVINO; NONOOO;
RAQUELSS; SUPERMARKET002; ZHANGJIANJUN;
AUIQUVSHOP; FANYITAILING; NSIUEODEURH;
ONEFENRY SKIRTS; XINEMENGBIANLI;
YOUPINSHANG; CHENGUO1101; and KEN20151019,
Each an Individual, Business Entity, and Unincorporated
Association,

                  Defendants.

_____/

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, The North Face Apparel Corp., Vans, Inc., TBL Licensing LLC, Kipling Apparel Corp., Jansport Apparel Corp., and VF International Sagl (collectively "Plaintiffs"),[1] hereby sue Defendants, the Individuals, Business Entities, and Unincorporated Associations identified in the caption, which are set forth on Schedule "A" hereto (collectively "Defendants"). Defendants are promoting, selling, offering for sale, and distributing goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiffs' respective trademarks within this district through various Internet based e-commerce stores and interactive photo albums using the seller identification names set forth on Schedule "A" hereto (the "Seller IDs"). In support of their claims, Plaintiffs allege as follows:

---

[1] The Plaintiffs, The North Face Apparel Corp., Vans, Inc., TBL Licensing LLC, Kipling Apparel Corp., Jansport Apparel Corp., and VF International Sagl are related ultimate subsidiaries of V.F. Corporation which is a global leader in branded lifestyle apparel, footwear and accessories.

## JURISDICTION AND VENUE

1.       This is an action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.       Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through, at least, the Internet based e-commerce stores and photo albums accessible in Florida and operating under their Seller IDs. Alternatively, Defendants are alternatively subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFFS

4.      Plaintiff The North Face Apparel Corp. ("The North Face") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 3411 Silverside Road, Wilmington, DE 19810.

5.      Plaintiff Vans, Inc. ("Vans") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 1588 South Coast Dr, Costa Mesa, CA 92626.

6.      Plaintiff TBL Licensing LLC ("TBL") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 200 Domain Drive, Stratham, NH 03885.

7.      Plaintiff Kipling Apparel Corp. ("Kipling") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 3411 Silverside Road, Wilmington, DE 19810.

8.      Plaintiff Jansport Apparel Corp. ("Jansport") is a company organized and existing under the laws of the State of Delaware, having its principal place of business at 3411 Silverside Road, Wilmington, DE 19810.

9.      Plaintiff VF International Sagl ("VF International") is a company organized and existing under the laws of Switzerland, having its principal place of business at Via Laveggio, 5 6855 - Stabio, Switzerland.

10.     Goods bearing the Plaintiffs' registered trademarks set forth below are offered for sale and sold by Plaintiffs and/or their licensees which are related operating companies within the V.F. Corporation's family of companies, through various channels of trade within the State of Florida, including this district, and throughout the United States. Defendants, through the sale

and offer to sell counterfeit and infringing versions of Plaintiffs' branded products, are directly and unfairly competing with Plaintiffs' economic interests in the United States, including the State of Florida, and causing Plaintiffs irreparable harm and damage within this jurisdiction.

11.     Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Plaintiffs' individual trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with Plaintiffs' names and associated trademarks and the destruction of the legitimate market sector in which they operate.

12.     To combat the indivisible harm caused by the combined actions of Defendants and others engaging in similar conduct, each year Plaintiffs expend significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides and seminars. The exponential growth of counterfeiting over the Internet, including through online marketplace platforms and social media websites, has created an environment that requires companies, such as Plaintiffs, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and themselves from the ill effects of confusion and the erosion of the goodwill connected to Plaintiffs' respective brands.

## THE DEFENDANTS

13.     Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or

operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district, and conduct pervasive business through the simultaneous operation of commercial Internet based e-commerce stores via Internet marketplace websites and/or interactive photo albums via an Internet based image hosting website under the Seller IDs.

14.     Defendants use aliases in connection with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

15.     Defendants are the past and present controlling forces behind the sale of products using and/or bearing counterfeits and infringements of Plaintiffs' trademarks as described.

16.     Defendants directly engage in unfair competition with Plaintiffs by advertising, offering for sale and/or selling goods bearing and/or using counterfeits and infringements of one or more of Plaintiffs' individual trademarks to consumers within the United States and this district through Internet based e-commerce stores and interactive photo albums using at least the Seller IDs, as well as additional names, e-commerce stores, photo albums, or seller identification aliases not yet known to Plaintiffs. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing versions of Plaintiffs' branded goods into the State.

17.     Defendants have registered, established or purchased, and maintained their Seller IDs. Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or image hosting websites where they offer to sell and/or sell, during the registration or maintenance process related to their respective Seller IDs. Many Defendants have registered and/or maintained their Seller IDs for the sole purpose of engaging in illegal counterfeiting activities.

18.     Defendants will likely continue to register or acquire new seller identification aliases and photo albums as well as related payment accounts for the purpose of selling and/or offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of one or more of Plaintiffs' respective trademarks unless preliminarily and permanently enjoined.

19.     Defendants' Seller IDs, associated payment accounts, and any other alias e-commerce stores, seller identification names, and photo albums used in connection with the sale of counterfeit and infringing goods bearing and/or using one or more of Plaintiffs' respective trademarks are essential components of Defendants' online activities and are the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiffs. Moreover, Defendants are using Plaintiffs' respective famous brand names and associated trademarks to drive Internet consumer traffic to their e-commerce stores and photo albums operating under the Seller IDs, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiffs' legitimate marketplace and intellectual property rights at Plaintiffs' expense.

## COMMON FACTUAL ALLEGATIONS

### The North Face's Trademark Rights

20.      The North Face is the owner of all rights, title, and interest in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "TNF Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| THE NORTH FACE | 0,983,624 | May 14, 1974 | USC 003 - Backpacks<br>USC 022 - Sleeping bags; tents, snowshoes, and skis<br>USC 039 - Camping clothing namely rainwear, parkas, vests, trousers, shoes, gloves and headgear |
|  | 1,030,071 | January 13, 1976 | IC 018 - Backpacks<br>IC 020 - Sleeping bags<br>IC 022 - Tents<br>IC 025 - Camping clothing, namely, rainwear, parkas, vests, trousers, shoes, gloves, headgear and snowshoes |
|  | 2,097,715 | September 16, 1997 | IC 018 - Backpacks<br>IC 020 - Sleeping bags<br>IC 022 - Tents<br>IC 025 - Clothing, namely, parkas, vests, jackets, anoraks, pants, ski bibs, gloves, mittens, underwear, hats, headbands, caps, ski suits, gaiters, shorts, and shirts |
|  | 3,538,773 | November 25, 2008 | IC 009 - Computer bags<br>IC 018 - All purpose sporting bags, backpacks, day packs, knapsacks, rucksacks, book bags, tote bags, handbags, duffel bags, knap sacks and duffel sacks, hip and lumbar packs, shoulder bags, book bags, waist packs, fanny packs, day packs, shoulder bags, satchels, mountaineering bags, Boston bags, |

| | | | |
|---|---|---|---|
| | | | internal frame packs, backpack bottle pockets, rain covers used to cover the aforesaid; hydration packs, namely, backpack hydration systems consisting of a backpack, a reservoir, and a mouthpiece connected to the reservoir by a tube; parts and fittings for all the aforesaid goods<br>IC 020 - Sleeping bags; covers for sleeping bags; sacks for carrying and storing sleeping bags; non-metal tent poles and tent stakes<br>IC 021 - Hydration packs, namely, hydration system consisting of a reservoir and a mouthpiece connected to the reservoir by a tube<br>IC 022 - Tents; tent accessories, namely, tent storage bags, rain flies, vinyl ground cloths, tent pole storage sacks<br>IC 025 - Clothing, namely, men's, women's, and children's T-shirts, shirts, tops, sweatshirts, sweatpants, pants, side zip pants, shorts, trousers, vests, parkas, anoraks, coats, jackets, wind-resistant jackets, jacket hoods, pullovers, sweaters, underwear, thermal underwear, tights, gloves, mittens; outerwear, namely, shells, one-piece shell suits, ski wear, ski suits, ski vests, ski jackets, ski bibs, bib overalls, bib pants, snowboard wear, snow pants, snow suits, rain wear, rain jackets, rain pants, gaiters, namely, neck gaiters; skirts, skorts, dresses, swim trunks; footwear, namely, athletic shoes, sneakers, trail running shoes, climbing shoes, hiking shoes, slippers, boots, trekking boots, hiking boots, snowshoes, sandals; headgear, namely, caps, hats, headbands, scarves, earbands, balaclavas, visors, beanies |

| | | | IC 035 - On-line retail store services, retail store services, mail order, catalogue and distributorship services, all featuring camping and outdoor gear and equipment, hardware, clothing, sportswear, eyewear, footwear, headgear, sports equipment and related accessories |
|---|---|---|---|
| THE NORTH FACE | 3,630,846 | June 2, 2009 | IC 025 - Footwear; head wear; rainwear; scarves; ski wear |
| | 3,630,850 | June 2, 2009 | IC 025 - Footwear; gloves; headgear, namely, hats, caps, headbands, visors, hosiery, namely long underwear; jackets; mittens; pants; parkas; shirts; shorts; ski jackets; skirts; tights; vests |

The TNF Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the TNF Marks are attached hereto as Composite Exhibit "1."

21.    The TNF Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of The North Face's quality, reputation, and goodwill.

22.    Further, The North Face and its related companies expend substantial resources developing, advertising and otherwise promoting the TNF Marks. The TNF Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

23.    The North Face and its related companies extensively use, advertise, and promote the TNF Marks in the United States in connection with the sale of high-quality goods. As a result, the TNF Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

24.     The North Face has carefully monitored and policed the use of the TNF Marks and has never assigned or licensed the TNF Marks to any Defendant in this matter.

25.     Genuine goods bearing and/or using the TNF Marks are widely legitimately advertised and promoted by The North Face, its related companies, authorized distributors, and unrelated third parties via the Internet.  Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to The North Face's overall marketing and consumer education efforts. Thus, The North Face, its related companies, and authorized distributors expend significant monetary and other resources on Internet marketing and consumer education, including search engine optimization ("SEO") and search engine marketing ("SEM") strategies. Those strategies allow The North Face, its related companies, and authorized distributors to educate consumers fairly and legitimately about the value associated with the TNF Marks and the goods sold thereunder. Similarly, Defendants' individual seller stores and photo albums are indexed on search engines and compete directly with The North Face for space in the search results.

**Vans's Trademark Rights**

26.     Vans is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "VANS Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| VANS | 1,267,262 | February 14, 1984 | IC 025 - Shoes |

| | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| **VANS** | 1,353,939 | August 13, 1985 | IC 014 - Jewelry<br>IC 018 - Wallets, handbags and all purpose tote bags |
| **VANS** | 1,861,013 | November 1, 1994 | IC 025 - Clothing and footwear; namely, sport shirts, T-shirts, hats, shorts, jogging suits, socks and shoes for men, women and children |
|  | 2,177,772 | August 4, 1998 | IC 025 - Footwear |
|  | 5,070,470 | November 1, 2016 | IC 025 - Footwear, namely, twin-gore slip-on shoes |

The VANS Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the VANS Marks are attached hereto as Composite Exhibit "2."

27.     The VANS Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of Vans's quality, reputation and goodwill.

28.     Further, Vans and its related companies expend substantial resources developing, advertising and otherwise promoting the VANS Marks. The VANS Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

29.     Vans and its related companies extensively use, advertise, and promote the VANS Marks in the United States in connection with the sale of high-quality goods. As a result, the VANS Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

30.     Vans has carefully monitored and policed the use of the VANS Marks and has never assigned or licensed the VANS Marks to any Defendant in this matter.

31.     Genuine goods bearing and/or using the VANS Marks are widely legitimately advertised and promoted by Vans, its related companies, and authorized distributors via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to Vans's overall marketing and consumer education efforts. Thus, Vans expends significant monetary and other resources on Internet marketing and consumer education, including SEO and SEM strategies. Those strategies allow Vans and its related companies to educate consumers fairly and legitimately about the value associated with the VANS Marks and the goods sold thereunder. Similarly, Defendants' individual seller stores and photo albums are indexed on search engines and compete directly with Vans for space in the search results.

### TBL's Trademark Rights

32.     TBL is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "TBL Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
|  | 1,075,061 | October 11, 1977 | IC 025 - Footwear, namely boots, work shoes, and hiking shoes |
| TIMBERLAND | 2,932,268 | March 15, 2005 | IC 025 - Footwear; clothing, namely coats, jackets, rainwear, sweaters, shirts, pants, shorts, headwear, gloves, neckwear, belts, sweatshirts, t-shirts, vests, socks |
|  | 2,947,228 | May 10, 2005 | IC 025 - Footwear; clothing, namely coats, jackets, rainwear, sweaters, shirts, pants, shorts, headwear, gloves, neckwear, belts, sweatshirts, t-shirts, vests, socks |

The TBL Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the TBL Marks are attached hereto as Composite Exhibit "3."

33.     The TBL Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of TBL's quality, reputation and goodwill.

34.     Further, TBL and its related companies expend substantial resources developing, advertising and otherwise promoting the TBL Marks. The TBL Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

35.     TBL and its related companies extensively use, advertise, and promote the TBL Marks in the United States in connection with the sale of high-quality goods. As a result, the TBL Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

36.     TBL has carefully monitored and policed the use of the TBL Marks and has never assigned or licensed the TBL Marks to any Defendant in this matter.

37.     Genuine goods bearing and/or using the TBL Marks are widely legitimately advertised and promoted by TBL, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to TBL's overall marketing and consumer education efforts. Thus, TBL expends significant monetary and other resources on Internet marketing and consumer education, including SEO and SEM strategies. Those strategies allow TBL and its related companies to educate consumers fairly and legitimately about the value associated with the TBL Marks and the goods sold thereunder. Similarly, Defendants' individual seller stores and photo albums are indexed on search engines and compete directly with TBL for space in the search results.

**Kipling's Trademark Rights**

38.     Kipling is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "KIPLING Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
|  | 1,889,891 | April 18, 1995 | IC 018 - traveling bags; handbags; schoolbags; all purpose sport bags; cosmetic bags sold empty; vanity cases sold empty; suitcases; carrying cases for books, stationery, clothing and shoes; rucksacks; backpacks; waist packs; bags for board games and card games; key cases; pocket wallets and purses |
| kipling | 1,952,994 | January 30, 1996 | IC 018 - traveling trunks and traveling bags, handbags, school bags, athletic sport bags, make-up bags sold empty, toilet cases sold empty, suitcases, attache cases, book bags, rucksacks, backpacks, waist packs, key cases, pocket wallets, purses, and umbrellas |
| KIPLING | 2,945,417 | May 3, 2005 | IC 018 - travel cases; suitcases; school bags; bags, namely, all purpose sport bags, bags for campers, bags for climbers, cosmetic bags sold empty, duffel bags, clutch bags, handbags, travel bags; backpacks |

The KIPLING Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the KIPLING Marks are attached hereto as Composite Exhibit "4."

39.     The KIPLING Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of Kipling's quality, reputation and goodwill.

16

40.     Further, Kipling and its related companies expend substantial resources developing, advertising and otherwise promoting the KIPLING Marks. The KIPLING Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

41.     Kipling and its related companies extensively use, advertise, and promote the KIPLING Marks in the United States in connection with the sale of high-quality goods. As a result, the KIPLING Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

42.     Kipling has carefully monitored and policed the use of the KIPLING Marks and has never assigned or licensed the KIPLING Marks to any Defendant in this matter.

43.     Genuine goods bearing and/or using the KIPLING Marks are widely legitimately advertised and promoted by Kipling, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to Kipling's overall marketing and consumer education efforts. Thus, Kipling expends significant monetary and other resources on Internet marketing and consumer education, including SEO and SEM strategies. Those strategies allow Kipling and its related companies to educate consumers fairly and legitimately about the value associated with the KIPLING Marks and the goods sold thereunder. Similarly, Defendants' individual seller stores and photo albums are indexed on search engines and compete directly with Kipling for space in the search results.

**Jansport's Trademark Rights**

44.     Jansport is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "EASTPAK Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| EASTPAK | 1,524,386 | February 14, 1989 | IC 016 - Book bags<br>IC 018 - Brief cases and luggage, back packs, day packs, knapsacks, tote bags, duffle bags |
| EASTPAK | 2,017,368 | November 19, 1996 | IC 018 - All-purpose sporting bags, soft luggage, luggage cases, backpacks, day packs, knapsacks, bookbags, tote bags, duffel bags, garment bags, clothing bags, pullman cases and briefcases |
| EASTPAK U.S.A. | 5,961,970 | January 14, 2020 | IC 016 - Pencil cases<br>IC 018 - Backpacks; Coin purses; Drawstring bags; Duffle bags; Fanny packs; Handbags; Luggage; Messenger bags; Shoulder bags; Tote bags; Wallets; Briefcases and attache cases; Suitcases with wheels; Toiletry cases sold empty; Wheeled duffle bags |

The EASTPAK Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the EASTPAK Marks are attached hereto as Composite Exhibit "5."

45.     The EASTPAK Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of Jansport's quality, reputation and goodwill

46.     Further, Jansport and its related companies expend substantial resources developing, advertising and otherwise promoting the EASTPAK Marks. The EASTPAK Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

47.     Jansport and its related companies extensively use, advertise, and promote the EASTPAK Marks in the United States in connection with the sale of high-quality goods. As a result, the EASTPAK Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

48.     Jansport has carefully monitored and policed the use of the EASTPAK Marks and has never assigned or licensed the EASTPAK Marks to any Defendant in this matter.

49.     Genuine goods bearing and/or using the EASTPAK Marks are widely legitimately advertised and promoted by Jansport, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to Jansport's overall marketing and consumer education efforts. Thus, Jansport expends significant monetary and other resources on Internet marketing and consumer education, including SEO and SEM strategies. Those strategies allow Jansport and its related companies to educate consumers fairly and legitimately about the value associated with the EASTPAK Marks and the goods sold thereunder. Similarly, Defendants' individual seller stores and photo albums are indexed on search engines and compete directly with Jansport for space in the search results.

**VF International's Trademark Rights**

50.     VF International is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and

Trademark Office (collectively, the "NAPAPIJRI Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| **NAPAPIJRI** | 2,058,049 | April 29, 1997 | IC 018 - Bags, namely handbags, shoulder bags, waist bags and traveling bags, and suitcases and knapsacks<br>IC 025 - Clothing, namely, jackets, waist-jackets, shorts, T-shirts, trousers, pants, cardigans, pullovers, and sweaters |
| NAPAPIJRI | 5,953,603 | January 7, 2020 | IC 018 - Luggage bags, luggage trunks; travelling trunks; travelling bags; all-purpose carrying bags; handbags; schoolbags; bags for sports; suitcases; rucksacks; wallets; belt bags and hip bags; luggage tags; cosmetic bags sold empty; toiletry bags sold empty<br>IC 025 - Shirts, shorts; sports pants, sports shirts; quilted and hydro-repellent jackets; track suits; thermal jackets; sports jerseys; pullovers; sweaters; jackets; coats; trousers; tee-shirts; tights; waistcoats; hats; footwear; shoes; boots; bandanas; bathing suits; bath sandals; beach cover-ups; beach shoes; belts; dresses; gloves; hosiery; sweaters; leggings; overcoats; parkas; scarves; shirts; ski boots; ski gloves; skirts; socks; waterproof jackets and pants |

The NAPAPIJRI Marks are used in conjunction with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the NAPAPIJRI Marks are attached hereto as Composite Exhibit "6."

51.     The NAPAPIJRI Marks have been used in interstate commerce to identify and distinguish high-quality goods for an extended period of time and serve as symbols of VF International's quality, reputation and goodwill.

52.     Further, VF International and its related companies expend substantial resources developing, advertising and otherwise promoting the NAPAPIJRI Marks. The NAPAPIJRI Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

53.     VF International and its related companies extensively use, advertise, and promote the NAPAPIJRI Marks in the United States in connection with the sale of high-quality goods. As a result, the NAPAPIJRI Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning among consumers as identifiers of high-quality goods.

54.     VF International has carefully monitored and policed the use of the NAPAPIJRI Marks and has never assigned or licensed the NAPAPIJRI Marks to any Defendant in this matter.

55.     Genuine goods bearing and/or using the NAPAPIJRI Marks are widely legitimately advertised and promoted by VF International, its related companies, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing is important to VF International's overall marketing and consumer education efforts. Thus, VF International expends significant monetary and other resources on Internet marketing and consumer education, including SEO and SEM strategies. Those strategies allow VF International and its related companies to educate consumers fairly and legitimately about the value associated with the NAPAPIJRI Marks and the goods sold

21

thereunder. Similarly, Defendants' individual seller stores and photo albums are indexed on search engines and compete directly with VF International for space in the search results.

**Defendants' Infringing Activities**

56.     Defendants are each promoting and advertising, distributing, selling, and/or offering for sale goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of one or more of the TNF Marks, the VANS Marks, the TBL Marks, the KIPLING Marks, the EASTPAK Marks, and/or the NAPAPIJRI Marks (the "Counterfeit Goods") through at least the Internet based e-commerce stores and interactive photo albums operating under the Seller IDs. Specifically, Defendants are using the TNF Marks, VANS Marks, TBL Marks, KIPLING Marks, EASTPAK Marks, and/or NAPAPIJRI Marks (collectively, "Plaintiffs' Marks") to initially attract online consumers and drive them to Defendants' e-commerce stores and photo albums operating under the Seller IDs. Defendants are each using identical copies of one or more of the Plaintiffs' Marks for different quality goods. Plaintiffs have used their respective Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiffs' merchandise.

57.     Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiffs' genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiffs despite Defendants' knowledge that they are without authority to use Plaintiffs' Marks. The net effect of Defendants' actions is likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of

Defendants' goods offered for sale in Defendants' e-commerce stores and photo albums are genuine goods originating from, associated with, and/or approved by Plaintiffs.

58.     Defendants advertise their e-commerce stores and photo albums, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores or interactive photo albums on, at least, one e-commerce marketplace website or image hosting website under, at least, the Seller IDs. In so doing, Defendants improperly and unlawfully use one or more of Plaintiffs' Marks without Plaintiffs' permission.

59.     As part of their overall unlawful scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of Plaintiffs' Marks. Specifically, Defendants are using counterfeits and infringements of one or more of Plaintiffs' famous names and Plaintiffs' Marks to make their e-commerce stores and photo albums selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiffs and non-Plaintiffs' goods and information online. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiffs' genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks, and (iii) increasing Plaintiffs' overall cost to market their goods and educate consumers about their brands via the Internet.

60.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiffs and the consuming public for Defendants' own benefit.

61.     At all times relevant hereto, Defendants in this action had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

62.     Defendants' use of Plaintiffs' Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiffs' consent or authorization.

63.     Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' respective goodwill and reputations.  If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

64.     Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiffs' respective genuine goods and Defendants' Counterfeit Goods, which there is not.

65.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A" hereto, are being used by Defendants to accept, receive,

and deposit profits from Defendants' trademark counterfeiting and infringing, and unfairly competitive activities connected to their Seller IDs, and any other alias e-commerce stores, photo albums, seller identification names, or user names being used and/or controlled by them.

66.     Further, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiffs.

67.     Plaintiffs have no adequate remedy at law.

68.     Plaintiffs are suffering irreparable injury and have suffered substantial damages because of Defendants' unauthorized and wrongful use of Plaintiffs' Marks. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

69.     The harm and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

<u>**COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**</u>

70.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 69 above.

71.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the Counterfeit Goods.

72.     Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of

Plaintiffs' Marks. Defendants are continuously infringing and inducing others to infringe Plaintiffs' Marks by using one or more of them to advertise, promote, offer to sell, and/or sell counterfeit and infringing goods bearing and/or using Plaintiffs' Marks.

73.    Defendants' concurrent counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

74.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiffs and are unjustly enriching Defendants with profits at Plaintiffs' expense.

75.    Defendants' above-described unlawful actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' respective rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

76.    Plaintiffs have each suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined. Additionally, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II - FALSE DESIGNATION OF ORIGIN**
**PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

77.    Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 69 above.

78.    Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace and image hosting website.

79.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' respective, genuine goods.  However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

80.     Defendants have used in connection with their advertisement, offers for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress which tend to falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

81.     Defendants have each authorized infringing uses of one or more of Plaintiffs' Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

82.     Additionally, Defendants are using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for space within organic and paid search engine and social media results, thereby jointly depriving Plaintiffs of a valuable marketing and educational tool which would otherwise be available to Plaintiffs, and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web and across social media platforms.

83.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

84.     Plaintiffs have no adequate remedy at law, and have each sustained both individual and indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and each Plaintiff will continue to suffer irreparable injury to their respective goodwill and business reputation, as well as monetary damages.

## COUNT III - COMMON LAW UNFAIR COMPETITION

85.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 69 above.

86.     This is an action against Defendants based on their promotion, advertisement, distribution, sale, and/or offering for sale of goods bearing and/or using marks that are virtually identical to Plaintiffs' Marks in violation of Florida's common law of unfair competition.

87.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of one or more of Plaintiffs' Marks. Defendants are also each using counterfeits and infringements of one or more of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

88.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores and photo albums as a whole and all products sold therein by their use of Plaintiffs' Marks.

89.    Plaintiffs have no adequate remedy at law and are suffering irreparable injury and damages because of Defendants' actions. Moreover, Defendants are unjustly profiting from those actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

90.    Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 69 above.

91.    This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods bearing and/or using one or more of Plaintiffs' Marks.  Plaintiffs are the owners of all common law rights in and to Plaintiffs' Marks.

92.    Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of Plaintiffs' Marks.

93.    Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing and/or using Plaintiffs' Marks.

94.    Plaintiffs have no adequate remedy at law and are suffering damages and irreparable injury because of Defendants' actions.  Moreover, Defendants are unjustly profiting from those actions.

## PRAYER FOR RELIEF

95.    WHEREFORE, Plaintiffs demand judgment on all Counts of this Amended Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or trade dress similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' respective name or trademarks; and from otherwise unfairly competing with Plaintiffs.

b.     Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, enjoining Defendants

and all third parties with actual notice of the injunction from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

   c. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, each Defendant and the applicable governing Internet marketplace and image hosting website operators and/or administrators for the Seller IDs who are provided with notice of the injunction issued by the Court, disable and/or cease facilitating access to the Seller IDs, and any other alias e-commerce stores, seller identification names, photo albums, and user names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell and/or selling goods bearing and/or using counterfeits and infringements of Plaintiffs' Marks.

   d. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, any Internet marketplace and image hosting website operators and/or administrators for the Seller IDs who are provided with notice of the injunction issued by the Court, identify any e-mail address known to be associated with Defendants' respective Seller ID.

   e. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, any Internet marketplace and image hosting website operators and/or administrators who are provided with notice of an injunction issued by the Court, permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks via the e-commerce stores and Internet based photo albums operating under the Seller IDs, and upon Plaintiffs'

request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks associated with or linked to the same sellers or linked to any other alias e-commerce stores, seller identification names, photo albums, and user names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

   f. Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiffs' request, Defendants and any Internet marketplace and image hosting website operators and/or administrators who are provided with notice of an injunction issued by the Court, immediately cease fulfillment of and sequester all goods of each Defendant bearing and/or using one or more of Plaintiffs' Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiffs.

   g. Entry of an order requiring Defendants to account to and pay Plaintiffs for all profits and damages resulting from Defendants' trademark counterfeiting and infringing, and unfairly competitive activities, and that the award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

   h. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

   i. Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiffs' request, Defendants and any financial institutions, payment processors, banks, escrow

services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other alias e-commerce stores, seller identification names, photo albums, and/or user names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

    j.  Entry of an award of pre-judgment interest on the judgment amount.

    k.  Entry of an Order requiring Defendants to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

    l.  Entry of an order for any further relief as the Court may deem just and proper.

DATED: December 23, 2021.   Respectfully submitted,

          STEPHEN M. GAFFIGAN, P.A.

          By: **Stephen M. Gaffigan**
          Stephen M. Gaffigan (Fla. Bar No. 025844)
          Virgilio Gigante (Fla. Bar No. 082635)
          T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
          401 East Las Olas Blvd., #130-453
          Ft. Lauderdale, Florida 33301
          Telephone: (954) 767-4819
          E-mail: stephen@smgpa.net
          E-mail: leo@smgpa.net
          E-mail: raquel@smgpa.net

          Attorneys for PLAINTIFFS

## SCHEDULE "A"
## DEFENDANTS BY NUMBER, SELLER ID, STORE NUMBER,
## FINANCIAL ACCOUNT, AND INFRINGING PRODUCT NUMBER

| Def. No. | Defendant / Seller ID | Store Number / Financial Account | Infringing Product No. |
|---|---|---|---|
| 1 | Cekcya Store aka lingdazhang | 4647105 | 1005001388188463 |
| 2 | AKSR Sugarios Store | 4458033 | 1005001671095551 |
| 3 | MENNE Store aka yang1105 | Store No: 5382295 PayPal Account: 1139888401@qq.com | 1005001373521265 |
| 4 | CYDM Store | 5577199 | 10000058279129 |
| 5 | HGLI Store | 910342021 | 1005001358029806 |
| 6 | High quality cashmere female Store | 5058275 | 1005001321634139 |
| 7 | king-pro Store | 5883446 | 1005001485794334 |
| 8 | Shop5561007 Store | 5561007 | 10000119490798 |
| 9 | WENY Store | 4700002 | 4000428778020 |
| 10 | 88 little monkey 8 Store | 5366240 | 4000500288712 |
| 11 | a bag for happiness Store | 5073126 | 4000706329522 |
| 12 | Bag for Buyer Store | 4640195 | 33010973503 |
| 13 | Healthy Shopping Store | 2857079 | 4001322537347 |
| 14 | make friends Store | 5743088 | 4001073232635 |
| 15 | Agoodcoat | 21565385 | 566889684 |
| 16 | brand350 | 21540575 | 552979870 |
| 17 | Buyer666 | 21099782 | 472496177 |
| 18 | casualshop1314 | 21399967 | 510949515 |
| 19 | clotheshopstore | 21403610 | 501329955 |
| 20 | coatzheng | 21215839 | 547745710 |
| 21 | designershop0110 | 21403257 | 551449355 |
| 22 | designershop1112 | 21408754 | 510894310 |
| 23 | designershop1115 | 21408778 | 513824294 |
| 24 | designershop2010 | 21408776 | 552667417 |
| 25 | designershop2020 | 21562262 | 563350191 |
| 26 | designershop4603 | 21408768 | 512721174 |
| 27 | designershop7778 | 21408743 | 548185918 |
| 28 | dhreliablestore888 | 21211150 | 553861529 |
| 29 | di_girl | 21065054 | 459611544 |
| 30 | Didmore | 21281010 | 528261075 |
| 31 | docery | 21210815 | 506485847 |
| 32 | Fenfen0309 | 21193044 | 557040540 |
| 33 | givenchy999 | 512353444 | 21228280 |
| 34 | godmen | 21271486 | 494043477 |

| Def. No. | Defendant / Seller ID | Store Number / Financial Account | Infringing Product No. |
|---|---|---|---|
| 35 | happydh666 | 21102024 | 575746483 |
| 36 | Happygo8 | 20724386 | 425299382 |
| 37 | heyjames | 21000976 | 504125769 |
| 38 | hiphopboy | 21271153 | 544378025 |
| 39 | Hongyundangtou888 | 20277980 | 513904125 |
| 40 | hotbitch | 552302966 | 21545885 |
| 41 | jack998 | 20325018 | 476133181 |
| 42 | jingshan666 | 21207298 | 468323044 |
| 43 | Jiqiao | 20330247 | 472956380 |
| 44 | kids_gift | 21100619 | 507572319 |
| 45 | kk_tees | 21065300 | 517554861 |
| 46 | Luxuryaape | 21035312 | 415769272 |
| 47 | Mei_hairstyle | 20895183 | 444648899 |
| 48 | mingfeng899 | 20903551 | 570244520 |
| 49 | Myleisure | 21565165 | 566335672 |
| 50 | nasaspace | 21271488 | 544370536 |
| 51 | northface_tnf | 21175783 | 569172348 |
| 52 | onlove | 21019186 | 588487244 |
| 53 | qingfeng25 | 21573714 | 589574703 |
| 54 | seals168 | 14774582 | 591616872 |
| 55 | sepal01 | 21021768 | 503775165 |
| 56 | shamolvzhou | 21129316 | 595419508 |
| 57 | shirt_shop6688 | 13617463 | 463188523 |
| 58 | Sowangzhejk | 20354023 | 418162339 |
| 59 | Square1985 | 21135622 | 455249755 |
| 60 | streetfashion2020 | 21560579 | 561906429 |
| 61 | Suiyuan99 | 21161336 | 512901973 |
| 62 | topfashion2020 | 21562438 | 563366140 |
| 63 | topshop1311 | 21409004 | 506366548 |
| 64 | mens winter coats aka topshop1588 | 21465322 | 548174595 |
| 65 | xiaopingguo0202 | 21020787 | 504210642 |
| 66 | xinghuo1988 | 21004677 | 529372026 |
| 67 | xueqin985985 | 21455138 | 575353414 |
| 68 | yejianfeng2 | 20121185 | 447281616 |
| 69 | Yw69888 | 21145087 | 430192366 |
| 70 | zlq2018 | 21020533 | 425332628 |
| 71 | Air_force_store | 21447440 | 527206956 |
| 72 | Dh_stores | 21164270 | 565323183 |
| 73 | Dhgatetopmerchant | 20114553 | 373448732 |
| 74 | KDshoe Store | 20635501 | 513477259 |

| Def. No. | Defendant / Seller ID | Store Number / Financial Account | Infringing Product No. |
|---|---|---|---|
| | aka Fjzlm | | |
| 75 | lymington | 21546820 | 566102196 |
| 76 | Nk_vapormax | 21423083 | 516611278 |
| 77 | Nkgoodshoes002 | 21405533 | 523448836 |
| 78 | usonline | 21164032 | 567661760 |
| 79 | Wyl3 | 21220965 | 493785194 |
| 80 | buyyeezy | 21183609 | 622382052 |
| 81 | dongfangmingzhuok Store | 14499099 | 404223876 |
| 82 | Elanping | 21169691 | 439202980 |
| 83 | gfhyue | 21110108 | 580237295 |
| 84 | hd9988 | 501295682 | 21345323 |
| 85 | hotsaletrade | 20966875 | 411126371 |
| 86 | iyeezy500 | 21183239 | 622832667 |
| 87 | luxury11 | 21110824 | 580267633 |
| 88 | machoes | 21039202 | 596687396 |
| 89 | Morning0114 | 21051156 | 551492567 |
| 90 | monclair aka ogmine | 21595232 | 597258344 |
| 91 | Rose_king | 21228841 | 551491382 |
| 92 | rose28 | 21225871 | 556862172 |
| 93 | Shen_2018 | 20770972 | 424135116 |
| 94 | Chaussures pour homme aka shoespalace2018 | 20991237 | 578822846 |
| 95 | sneakerwei | 21214984 | 622381754 |
| 96 | xunwan | 20331243 | 489414444 |
| 97 | Gooddayitems | 3242165081 | 558279706 |
| 98 | ChaoJu666 | 5d4d2b4f7ad2424bc61d6bad | 5dda44f646f7f82613a3defb |
| 99 | chenjiaxiao | 5e22c6f129e7861bb04ce134 | 5fa128a4cb26ad602342c35ea |
| 100 | daliaoj | 5d47cf8870327a2c43ef29f7 | 5df3047fb6690a057a5be799 |
| 101 | ultrapluss-brow | 5f94c1fe4c83b85e3417f985 | 5fa10af9752f1a9db4df7194 |
| 102 | zhanghelong880123 | 5de11132b696791871121f7c | 5fbc6e60209189cceaf4b80e |
| 103 | huanghaifen556 | 5d43dc1da5f07b4c13125092 | 5fc4c953deefd64e51da362e |
| 104 | Jerry Xia | 58f601ff01627a47892a2db9 | 5f2cf1835d4543003ab253b6 |
| 105 | KassandraTrevino | 59c48f7a8696be145b50a803 | 5b6d30cf2a188c1260503147 |
| 106 | nonooo | 5d413f20e13a7e1f57f663be | 5f61f904cb16e400551ab7cd |
| 107 | RAQUELss | 5f4f6ad6e82e1216e27e092f | 5f65f062a77045fe307fd5c2 |
| 108 | supermarket002 | 5949c3f18b96026b389d2244 | 5d43ede439d85007f8c1f543 |
| 109 | zhangjianjun | 583eeb56f097ec1b8a861212 | 5b6c4ea4f58f371248eb7f67 |
| 110 | auiquvshop | 5e969f51ca30692f55131f26 | 5f641e477e0b1a0040ef1313 |
| 111 | fanyitailing | 5d95992052e0246795bf9d22 | 5e00709f17fafd3a3983fb58 |
| 112 | nsiueodeurh | 5e9585d2842d240641d12ed6 | 5ecf2cf81f309c26b3d50d9b |

| Def. No. | Defendant / Seller ID | Store Number / Financial Account | Infringing Product No. |
|---|---|---|---|
| 113 | Onefenry Skirts | 5e9e790d86a50ed4fa1df7e8 | 5f7e7b80559c9f003ced0b4a |
| 114 | Xinemengbianli | 5d9163dcbffbb14190a52df7 | 5e33c0bcfca2f605eceb331d |
| 115 | youpinshang | 5cb54d738b2c370301b60548 | 5eedc9840ee4760106f699ee |
| 116 | chenguo1101 | laiyanfangde@163.com | |
| 117 | ken20151019 | chenguide@hotmail.com | |